JERRY E. SMITH, Circuit Judge,
dissenting:
I agree with the panel majority’s well-reasoned conclusion that no custom of starboard passage exists. But I disagree with the panel majority’s endorsement of the district court’s conclusion that COLREG 14 was not applicable in this situation. The COL-RE GS govern the three basic proximity situations: overtaking (rule 13), head-on (rule 14), and crossing (rules 15-17). No one argues that this was an overtaking situation. And the district court did not err in its conclusion that the MOUNT YMITOS’s fail *453 ure to maintain course precluded it from claiming the privilege of a stand-on vessel in a crossing situation. We are therefore left with COLREG 14 or nothing.
The district court and the panel majority have chosen the “nothing” option. The district court found that “the instant collision presented a passing situation,” and thus that the COLREGS did not apply.
I am unaware of any other case that has propounded the “passing situation” alternative to the statutory COLREGS. Certainly, ships traveling in opposite directions may pass one another with miles to spare, and never navigate with respect to one another. But Congress has mandated that “[wjhen two power driven vessels are meeting on reciprocal or neai’ly reciprocal courses so as to involve risk of collision each shall alter her course to starboard so that each shall pass on the port side of the other.” COLREG 14.
There can be no doubt that these ships were on “nearly reciprocal courses so as to involve risk of collision.” Roughly twenty minutes before the collision, MOUNT YMI-TOS and NOORDAM were traveling at 170 degrees and 325 degrees, respectively: nearly reciprocal north-south courses, angled slightly toward one another.[1] The district court specifically found that when the vessels were about 2% miles apart, a computerized navigation system determined them to be “on a collision course with a CPA [Closest Point of Approach] of less than 600 feet.” When two vessels, each weighing tens of thousands of tons, are on nearly reciprocal courses so as to miss each other with only a vessel length or two to spare, they are in a proximity situation to which the COLREGS apply.
It is immaterial that the vessels may have been unaware of each other’s presence. Each vessel’s negligent failure to fulfill her duty under the COLREGS gives rise to liability, regardless of the cause of the negligence. Courts have always required vessels that should have been aware of each other to navigate with respect to one another.[2] Both NOORDAM and MOUNT YMITOS must be held liable insofar as they failed to effect a port-to-port passage, in accordance with them duties under the COLREGS.
Because I cannot agree that this proximity situation was not governed by the COL-REGS, I respectfully dissent from Judge Jones’s well-written opinion.

. These angling courses could be interpreted as presenting a crossing situation. In that case, the result would be the same — the vessels effectively would be required to effect a port-to-port passage, but liability for their failure to do so would be placed primarily upon the give-way vessel, in this case the NOORDAM. See rule 15.

. See, e.g., Oliver J. Olson & Co. v. Luckenbach S.S. Co., 279 F.2d 662, 671 (9th Cir.1960) (vessels "saw or should have seen” each other's sidelights).